## SETTLEMENT AND RELEASE AGREEMENT

**THIS SETTLEMENT AND RELEASE AGREEMENT** (hereinafter "Agreement") is made on this *9* day of *3*, 2009 ("Effective Date"), by and between Shaan Honq International Cosmetics Corp. ("Shaan Honq"), a Taiwan corporation with an address at 29 Fl, No. 55 Chung Cheng 3rd Rd, Hsinshing District Kaohsiung 800 Taiwan, R.O.C. on the one hand, and Ching Ling Wang, an individual ("Wang") and Pao Pao Enterprise Inc., a California corporation with an address at 15308 El Prado Road, Chino, CA 91710, ("Pao Pao") on the other hand.  Hereinafter, Shaan Honq, Wang and Pao Pao may also be individually referred to as "Party" and collectively referred to as "Parties".

**NOW, THEREFORE,** in consideration of mutual promises and covenants herein contained, the Parties agree as follows:

1.1     "Representatives" means agents, servants, employees, directors, officers, shareholders, beneficiaries, dependents, parents, subsidiaries predecessors in interest, assignees, assignors, successors in interest, attorneys, representatives, affiliated and related entities, subsidiaries, and successors.

1.2     "Products" means **ESUCHEN** *Chihtsai*  (Esuchen, Chihtsai, and N.P.P.E.) hair care products and other products, including other brands manufactured by Shaan Honq.

1.3     Settlement Terms.  The "Settlement Terms" shall mean the following paragraphs A, B, and C below:

    A.  Wang and Pao Pao acknowledge that the Distributorship Agreement entered between the Parties on August 1, 2007 is and has been terminated since March 11, 2008 ("Distributorship Agreement").

    B.  Wang and Pao Pao and each of their Representatives hereby agree to:

        1.     Immediately discontinue the advertising, distribution, sale and or offering for sale of all the Products;

        2.     Immediately cease and desist the use of Shaan Honq's trademarks, service marks and trade names, including without limitation all good will, designs, discoveries improvements, trade secrets, documents and other data which relate in any manner to Shaan Honq's trademarks Esuchen, Chihtsai, and N.P.P.E.;

        3.     Immediately cease and desist the production, distribution, sale and or offering for sale any counterfeit, replica, imitation, and artificial RD Protein Cream;

        4.     Close and dissolve all companies associated with the Products including without limitation Esuchen Enterprise, Inc. and Esuchen Lifestyle Center Inc. by February 9, 2009 and provide Shaan Honq with documents evidencing the closing and dissolving of said companies named above;

        5.     Terminate and discontinue all websites associated with the advertising, distribution, sale and or offering for sale of the Products by February 9, 2009;

        6.     Indemnify, defend, and hold harmless Shaan Honq and its Representatives from and against all demands, damages, loss, cost, expense, royalties, claims for damages or liability in law or in equity, including without limitation, attorneys fees, court costs, and other litigation expenses that may at any time arise out of, or resulting in any way from Case No. UDRS 804653 *El Prado VIII, LLC v. Esuchen Laboratory Inc.* filed in the Superior Court of California, County of San Bernardino Rancho Cucamonga District;

        7.     Provide Shaan Honq with a copy of all contracts between Wang and/or Pao Pao on the one hand and their customers and/or  suppliers on the other hand, regarding the sale of the Products relating in any manner to Shaan Honq's trademarks Esuchen, Chihtsai, and N.P.P.E. ("Initial Contracts");

      8.      Immediately terminate the Initial Contracts and enter into a contract without the use of any Products names or Shaan Honq's trademarks, service marks, and/or trade names. Wang and Pao Pao must provide a copy of the contracts to Shaan Honq prior to the entering into the contract; and

      9.      Immediately provide a copy of the contract Wang and/or Pao Pao has with distributor Gorden Jung.

C.  Wang and Pao Pao further acknowledge that they owe an outstanding balance to Shaan Honq in the amount of USD$969,499.54 plus interest at the maximum rate permitted by law ("Debt") and agree to repay Shaan Honq the Debt commencing on January 1, 2010 according to Schedule A attached hereto and made a part hereof. Shaan Honq reserves the right to bring suits, claims, and actions against Wang and Pao Pao to collect the Debt prior to January 1, 2010. Shaan Honq may at Shaan Honq's sole discretion reduce the Debt owed by Wang and Pao Pao from time to time. Wang shall be personally liable for this debt as acknowledged by the Continuing Personal Guarantee attached hereto as Exhibit A and made a part hereof. A description of the Debt is attached as Exhibit B and made a part hereof.

1.4    <u>Release by Shaan Honq</u>. Provided that Wang and Pao Pao satisfy the Settlement Terms, Shaan Honq shall release and discharge Wang and Pao Pao from actions, causes of action, liabilities and claims based upon or arising out of Wang and Pao Pao's obligations under the Distributorship Agreement except for the Debt and any and all monies owed to Shaan Honq, provided however, that the promises, warranties, covenants, and obligations contained herein shall survive the releases set forth herein.

1.5    <u>Release by Wang and Pao Pao</u>. Wang, Pao Pao and each of their respective Representatives hereby fully release and forever discharge Shaan Honq and its Representatives from any and all manner of actions, causes of action, in law or in equity, suits, debts, liens, contracts, agreements, promises, liabilities, claims, damages, restitution, loss, controversies, trespasses, defenses, set-offs, and costs or expenses of any nature whatsoever, known or unknown, fixed or contingent, which Wang, Pao Pao and each of their respective Representatives, have had, now have, or may hereafter have against one another or their Representatives, by reason of any matter, cause of thing whatsoever, based upon, arising out of, or relating in any manner to the Products and the Settlement Terms; provided, however that the promises, warranties, covenants, and obligations contained herein shall survive the releases set forth herein.

1.6    <u>Statutory Disclosure.</u> The Parties and each of their respective Representatives acknowledge that they have been advised by legal counsel and are familiar with California Civil Code section 1542, which provides as follows:

> **"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."**

The Parties and each of their respective Representatives being aware of said code section, hereby expressly waive any and all rights they may have thereunder, as well as under any other statutes or common law principles of similar effect, except as to promises, warranties, covenants, and obligations contained herein, which shall survive.

1.7    <u>Indemnification</u>. Wang, Pao Pao, all companies that Wang held an interest in between ~~1995 to 1998~~ *2005 to 2008* ·~~ *N̄ J*, and each of their respective Representatives shall indemnify, defend, and hold harmless Shaan Honq and its Representatives from and against all demands, damages, loss, cost, expense, royalties, claims for damages or liability in law or in equity, including without limitation, attorneys fees, court costs, and other litigation expenses that may at any time arise out of, or resulting in any way from any 3rd party claims relating to the Distributorship Agreement, the sale of Shaan Honq's Products and Wang and/or Pao Pao's breach of this Agreement.

*C.L.W.*

*ui dy zi*

1.8   Independent Advice and Counsel.  Each of the Parties hereto executes this Agreement acting upon his, her, or its independent judgment and upon the advice of counsel, without any representation, express, or implied, or any nature, from each to the other, except as only specifically set forth herein.

1.9   No Admission of Liability.  This Agreement is a compromise of the above-mentioned Distributorship Agreement and shall not at any time be treated as an admission of liability by any Party hereto for any purpose whatsoever.

1.10   Entire Agreement; Successors.  This Agreement contains the full, complete, and entire agreement of the parties relating to the subject matter hereof.  This Agreement shall be binding upon and inure to the benefit of the heirs, executors, successors, and assigns of the respective parties hereto.

1.11   Governing Law; Attorney Fees, Costs.  This Agreement is entered into in the State of California.  Any dispute arising out of this Agreement shall be resolved by competent courts or tribunal of Los Angeles County, California.  In the event a lawsuit is filed as a result of a dispute arising out of this Agreement, it is agreed that the prevailing party is entitled to attorneys' fees from the other party.  All Parties shall be responsible for their own expenses, respectively, in relation to the Premises including, but not limited to, reasonable attorneys fees and filing fees, and neither Party shall be responsible for the other's expenses including attorneys' fees.

1.12   Counterparts; Headings.  This Agreement may be executed in any number of identical counterparts, each of which for all purposes is to be deemed to be an original, but all of which together will constitute but one instrument.  This Agreement will only be complete and binding when all parties have executed the Agreement.  Facsimile signatures are permissible and shall be considered binding.  The section headings are intended for convenience only and shall not be deemed to supersede or modify any provisions of this Agreement.

1.13   Authority; Reasonable Cooperation.  All Parties represent and warrant to each other that they have the right and lawful authority to enter into this Agreement for the purposes herein and that there are no other outstanding agreements or obligations inconsistent with the terms and provisions hereof.  Each Party shall execute and deliver any and all documents and perform any and all acts and things necessary, appropriate, convenient, or helpful to effectuate or further evidence the terms of this Agreement.

   **IN WITNESS WHEREOF,** the Parties hereto have executed this Agreement as of the Effective Date above.

**Shaan Honq Int'l Cosmetics Corp.**

By: _Tsai Chiu yueh_

Name: _TSAI Chiu yueh_

Title: _G. M._

_TSAI LUNG TSAI_
_president._

**Pao Pao Enterprise, Inc.**

By: _Ching-Ling Wang_

Name: _Ching-Ling Wang_

Title: _C. E. O._

**Ching Ling Wang**

By: _Ching Ling Wang_

Name: _Ching-Ling Wang_

Page 3

## SCHEDULE A

| DATE | MONTHLY PAYMENT AMOUNT |
|---|---|
| 1st Year:  January 1, 2010 to December 31, 2010 | $2,000.00 |
| 2nd Year:  January 1, 2011 to December 31, 2011 | $3,500.00 |
| 3rd Year:  January 1, 2012 to December 31, 2012 | $5,000.00 |
| 4th Year:  January 1, 2013 to December 31, 2013 | $7,500.00 |
| 5th Year:  January 1, 2014 to December 31, 2014 | $7,500.00 |
| 6th Year:  January 1, 2015 to December 31, 2015 | $7,500.00 |
| 7th Year:  January 1, 2016 to December 31, 2016 | $10,000.00 |
| 8th Year:  January 1, 2017 to December 31, 2017 | $10,000.00 |
| 9th Year:  January 1, 2018 to December 31, 2018 | $150,000.00 |
| 10th Year:  January 1, 2019 to December 31, 2019 | $12,792.00 |

**Total: $969,504.00**

C. L. W.

## EXHIBIT A

## CONTINUING PERSONAL GUARANTEE

In consideration of the credit Shaan Honq International Cosmetics Corp. ("Shaan Honq"), a Taiwan corporation with an address at 29 Fl, No. 55 Chung Cheng 3rd Rd, Hsinshing District Kaohsiung 800 Taiwan, R.O.C. ("Creditor") has extended or may extend or may have extended to Ching Ling Wang, an individual and Pao Pao Enterprise Inc., a California corporation with an address at 15308 El Prado Road, Chino, CA 91710 (collectively as "Debtors"), and for other valuable consideration, the undersigned, Ching Ling Wang located at 15308 El Prado Road, Chino, CA 91710 ("Guarantor") agree as follows:

1.      Obligations Of Guarantor.  Guarantor hereby unconditionally guarantees the payment when due of all of Debtors indebtedness now or hereafter owed to Shaan Honq, as provided herein.   The term "indebtedness" shall include every payment obligation which Debtors has or may have to Shaan Honq regardless of the form thereof and whenever due; and whether or not barred at any time by any statute of limitations; all in the broadest sense.

2.      Amount and term.  This is a Continuing Guarantee, without limitation of amount or duration, and shall be terminated only in accordance with paragraph 9.

3.      Guarantor's Waivers.  Guarantor waives notice of acceptance of this Guarantee, presentment, demand, protest, notice of dishonor, any right to require Shaan Honq to commence suit against any party liable on the indebtedness, and any defense based upon any election of remedies by Shaan Honq, including but not limited to an election to proceed by non-judicial foreclosure rather than judicial foreclosure, which destroys or impairs any of Guarantor's rights of subrogation or reimbursement against Debtors.  Guarantor also waives notice of new or additional obligations of Debtors to Shaan Honq, and the benefit of any statute of limitations affecting (i) Guarantor's obligations and their enforcement, or (ii) Shaan Honq's rights of recovery.

4.      Consent to Shaan Honq's Acts.  Guarantor agrees that Shaan Honq, without notice or consent, upon such terms as Shaan Honq may deem advisable, may do any one or more of the following: (a) Renew, compromise, extend, accelerate, or otherwise change the terms of any of the indebtedness; (b) Take and hold security for all or part of the indebtedness or for the performance of this Guarantee, and exchange, enforce, waive, and release any security; (c) Direct the order and manner of disposition of security, dispose of all or any part of the security at public or private sale (and purchase at such sale) and apply the proceeds of sale or other disposition against the indebtedness in such order and manner as Shaan Honq may determine; (d) Proceed directly against Guarantor, without first proceeding against Debtors or any other person or against any other security Shaan Honq may have; (e)   Compromise or settle with Debtors or any other person liable on the indebtedness; (f) Assign all or any part of its interest in this Guarantee; (g) On behalf of Guarantor, file and collect any claim or proof of claim which Guarantor may be entitled to file against the estate of Debtors in any bankruptcy, liquidation, dissolution, receivership assignment for the benefit of creditors, or other similar proceeding, whether administered by a court or otherwise; provided, however, that Shaan Honq shall have no duty to file or collect any such claim and its failure to do so shall not affect or impair its rights against Guarantor; and (h) Repay to Debtors, pursuant to court order in any bankruptcy, debt relief or other proceeding, any payment made to Shaan Honq on the Indebtedness, and in such event the liability of Guarantor for such amount shall be revived the same as if such amount had not been paid.

5.      Subordination.  Guarantor hereby subordinates all obligations which Debtors at any time may have to Guarantor, to Guarantor's obligation hereunder to Shaan Honq.  Upon Shaan Honq's request Guarantor shall collect, enforce, and shall receive any or all of Debtors' obligations to Guarantor, and shall pay the same to Shaan Honq on account of Debtors' indebtedness to Shaan Honq.  This subordination shall survive in the event of Debtors or Guarantor's dissolution, termination of existence, death, incompetence, cessation of business,

insolvency, inability to pay debts as they mature, assignment for the benefit of creditors, and transfer of a substantial portion of its or his property, and the appointment of a receiver of any of Debtors or Guarantor's property, and the commencement of any proceeding under any bankruptcy or insolvency law of which Debtors or Guarantor is the subject.

6.      Subrogation.  Guarantor waives any claim or right now or hereafter acquired against Debtors or any person primarily or contingently liable for the guaranteed obligations or that arise from the existence or performance of Guarantor's obligations hereunder, including, without limitation, any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification or participation in any claim or remedy of Shaan Honq against Debtors or any collateral security Shaan Honq now has or hereafter acquires, regardless of how such claim, remedy or right arises.

7.      Guarantor's Responsibility.  Guarantor accepts full responsibility for keeping informed of Debtors financial condition, and of all other circumstances bearing upon the risk of nonpayment of the indebtedness, which diligent inquiry would reveal.  Absent a request by Guarantor for specific information, Shaan Honq shall have no duty to give Guarantor any information known to Shaan Honq.

8.      Termination.  This Guarantee shall continue until Shaan Honq receives notice in writing, signed by Guarantor or Guarantor's legal representative, of Guarantor's termination hereof, and any such notice shall be effective only upon actual receipt by Shaan Honq.  No such termination shall relieve Guarantor or Guarantor's estate from liability for indebtedness incurred prior to Shaan Honq's receipt of such notice, and for 30 days thereafter.

9.      List Of Guarantees.  Guarantor warrants that no guarantees have been issued by Guarantor except as provided on a sheet attached hereto, listing for each guaranty the name of the creditor, the date, and the amount guaranteed.  Guarantor will give Shaan Honq similar information, in writing, for all guarantees that Guarantor executes after this date.

10.      Notices.  Any notices or other documents with respect to this Guarantee shall be in writing and delivered personally or by registered or certified mail, postage prepaid, addressed to the addresses stated in this Agreement, unless otherwise notified in writing, and (except for a notice of termination) shall be effective when personally delivered or as shown on the receipt.

11.      General.  This Guarantee shall be governed and construed by and in accordance with the laws of the State of California.  If Shaan Honq enforces this Guarantee, Shaan Honq shall be entitled to reasonable attorneys' fees and costs, plus interest thereon, and on the indebtedness, from due date until paid, at the rate of fifteen percent (15%) per annum or the maximum rate permitted by law, whichever is less.  This Guarantee shall inure to the benefit of and be enforceable by Shaan Honq, its successors and assigns, and shall bind Guarantor and the heirs, representatives, successors, and assigns of Guarantor.  If any part hereof shall be unenforceable, the balance shall remain in effect unless it thereby defeats the intention of the parties as expressed herein.

12.      Witness.  Guarantor agrees and acknowledges that this Guarantee shall be valid and enforceable whether or not it is witnessed.

Dated: ____3 - 9____, 2009

Guarantor's Signature: _____

Page 5

Guarantor's Full Legal Name: _Ching-Ling Wang_

Residential Address: _4885 Glenview St Chino Hills CA 91709_

Social Security Number: _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_

Driver's License Number: _A3570389_

Witness Signature: _[signature]_

Print Witness Name: _LIEN VONG_

Page 6

# EXHIBIT B

甲方：昇宏-台灣+美國 / 乙方：王清林

一、　　　收回美國、加拿大之經銷權：甲方已於 2008/3/11 正式發函告知乙方 **終止合約、收回美國及加拿大之代理權**，乙方自該日起即不再享有任何使用及行使之權利，因此乙方需於 2009/2/9 前即時放棄、關閉 ESUCHEN Enterprise Inc. (2005/8/4 申請) 及 ESUCHEN Lifestyle Center Inc. (2008/1/9 申請) 共二家，並不得行使相關商標、公司及商品名稱

二、　　　網站事宜：為維護彼此結束合約後之相關權利義務，請乙方於 2009/2/9 前將 ESUCHEN 等相關網站全數關閉。

三、　　　郵政信箱：為降低彼此結束合作關係後之相關損失，美國郵政信箱 ESUCHEN P.O. BOX 1144, Chino Hills, CA91709, U.S.A. 甲方願承接並負擔當初相關之設計費用，並由乙方應付帳款中扣除，2009/2/9 後郵政信箱將交由甲方全權接管。PS．請乙方於 2/4 告知費用。

四、　　　學院更換承租人：乙方需於 2009/2/9 之前將 ESUCHEN Lifestyle Center Inc.學院之「承租人」換成乙方自己的公司。雖然乙方於 2006 年 11 月以甲方名義承租簽約，但此學院與甲方無任何關係。

五、　　　貨款償還計劃：
乙方告知目前還無法談相關貨款償還計劃，因怕以目前的財務狀況達不到又會再度跳票，因此要求給予他一年的時間緩衝，待整個生意漸趨穩定後再預估能償還多少，彼此約定於 2010 年 1 月由乙方提出詳細償還計劃，細部將請律師擬出應付帳款明細讓乙方確認。PS．2/15 前請律師確認應付帳款總金額及明細。

六、　　各州現有代理商合約：甲乙雙方協議把現有美國各州之經銷商合約全部

重新換約，乙方需列出現有合約內有哪幾州之代理商及相關合約內容…等，

並不得再使用 ESUCHEN 等相關商標與公司名稱。乙方需以自己公司名稱重

新與各州代理商簽署合約，簽署之前需讓甲方看過合約內容。(乙方需提供

與 gorden 之合約內容，並誠實告知 2008/3/11 之前有哪幾州代理商→乙方告

知有紐約、紐澤西、甘乃迪、賓州、俄亥俄、肯塔基、西維吉尼雅、北卡、

南卡、佛羅里達、喬治亞、印地安納、明尼蘇達、威斯康辛、路易聖安那、

猶它、內華達、德州、加州、阿拉斯加、奧勒岡→去年代理商營業額約 80

萬。)

待 2009/2/9 所有事項釐清、處理完畢之後將再請專業律師重新擬定合約。


七、　　重新簽署區代理合約(非總代理)：未來乙方若欲重新跟甲方購買商品，

若由美國當地取貨，則付款條件為「現金票」。


以上內容為甲乙雙方今日之協議，雙方若願意將朝此方向進行，相關細部及補充

日後將交由專業律師擬定，


甲方：昇宏國際企業股份有限公司　　　　　　乙方：王清林

ESUCHEN LABORATORY INC.


見證人：界雲師父

_____


西　元　２　０　０　９　年　２　月　２　日　星　期　一

## 美國匯款記錄

| 2006年 | 3月21日 | 97,837.80 |
|---|---|---|
| | 7月14日 | 21,483.00 |
| | 9月1日 | 7,983.00 |
| | 9月21日 | 26,086.00 |
| 總計 | | 153,389.80 |

| 2007年 | 1月2日 | 30,978.95 |
|---|---|---|
| | 3月1日 | 110,000.00 |
| | 5月4日 | 56,095.58 |
| | 9月26日 | 59,980.00 |
| | 10月4日 | 247,416.06 |
| | 12月13日 | 26,025.00 |
| 總計 | | 530,495.59 |

| 2008年 | 1月7日 | 1,189.00 |
|---|---|---|
| | 1月25日 | 8,765.10 |
| | | |
| 總計 | | 9,954.10 |

(單位：美金)

| | |
|---|---|
| 2005  應收帳 | $304,413.64 |
| 2006 帳款全結清 | |
| 2007 應付而未付 | $639,414.05 |
| 2008 應付而未付 | $117,943.75 |
| 2008 出貨金額(未付) | $  26,047.20 |
| 總計'07+'08 未付金額 | $783,405.00 |
| 總計'05+'07+'08 未付金額 | $1,087,818.64 |

| | |
|---|---|
| 6月 Gillian Invoice USD | $122,971.35 |
| 昇宏實際點收貨品 USD | $118,319.10 |
| 差異 USD | $4,652.25 |

$US\$ 1,087,818.64 - US\$ 118319.1$

$= US\$969499.54$ (賸庸氣第一柜回台的貨款)

王庸林 2/5 2009